INHABITANTS OF DEXTER *vs.* INHABITANTS OF SANGERVILLE.

Piscataquis. Opinion January 1, 1880.

*Pauper settlement. Insane Hospital. R. S., c.* 143, § 20.

If an insane person be duly committed to the insane hospital by the municipal officers of a town under R. S., c. 143, § 12, and the friends of such insane person without filing the required bond in fact, and in the first instance pay all the expenses of commitment and support and the town makes no payment, the time of commitment and stay at the hospital is to be included in the period of residence, in the town where the insane person then had his home, necessary to change his settlement under R. S., c. 24, § 1, VI.

In such case the insane person is not supported by the town at the hospital, within the meaning of the last sentence of R. S., c. 143, § 20.

FACTS AGREED.

Action to recover of defendant the expenses of supporting Mrs. Nancy Bridgham, a pauper, whose settlement is alleged to have been in defendant town during the time supplies were furnished. Writ dated August 1, 1878. Plea, the general issue.

It is agreed that —— Bridgham, the husband of Nancy Bridgham, formerly had his settlement in Dexter, having resided there from his birth to May, 1870; was married in Dexter to said Nancy previous to that time, they then being both of age—over 21 years.

In May, 1870, Bridgham and his wife Nancy moved to Sangerville, and there made it their home for more than five successive years without receiving any supplies as a pauper except as herein stated. But it is admitted that in summer of 1874 she became insane; her husband carried her to the insane hospital at Augusta, —not having proper papers, he returned with her to Dexter, and then on due complaint September 23, 1874—she being then in the town of Dexter—she was duly committed as an insane person to said hospital by the selectmen of Dexter, and was discharged therefrom April 27, 1876. She was duly committed under c. 143, § 18, R. S. No bond was filed by her friends or others with the treasurer of the hospital. The town of Dexter was liable for her support under § 19. As a matter of fact her friends paid her expenses at the hospital during all the time she was there on the

aforesaid commitment—but upon her being duly committed again July 26, 1876, in similar manner, under similar circumstances by selectmen of Dexter, and the town of Dexter having become liable as on first commitment, they (the town of Dexter) have actually paid to the hospital expense: December 27, 1877, $33.01; March 29, 1877, $33.38; July 17, 1878, $29.34; of all of which defendants were duly notified and demand made within ten days after each payment and due denial made. If plaintiff is entitled to recover, it is for the above sums and interest thereon.

To simplify the case it is agreed on both sides that every condition of the case is complete, so as to present this question and this only, viz: what shall be the effect of her residing on a due commitment in the insane hospital a portion of the five years (as herein stated) ordinarily required to constitute a pauper settlement. If that circumstance does not affect the case of her settlement defendants are to be defaulted—if otherwise plaintiff to be nonsuited. She never returned to Sangerville after her first commitment, and her husband moved from Sangerville to Dexter in the fall of 1876, and there died.

*J. Crosby*, for the plaintiffs.

*A. M. Robinson*, for the defendants, cited R. S., c. 143, §§ 18, 20. R. S., c. 1, § 4, rule 2. *Veazie* v. *Chester*, 53 Maine, 29. *Pittsfield* v. *Detroit*, 53 Id. 442. *Jones* v. *Jones*, 18 Id. 313. *Burlington* v. *Swanville*, 64 Id. 78. *Hallowell* v. *Gardner*, 1 Id. 93.

SYMONDS, J. The person, to recover the expenses of whose support at the insane hospital this action is brought, at the time of such support had obtained a legal settlement in Sangerville by having her home there for five successive years without receiving aid as a pauper, unless the facts attending her commitment to the hospital on September 23, 1874, and her stay there till April 27, 1876, were such as to interrupt the residence and prevent her from acquiring a settlement.

She was duly committed by the municipal officers of Dexter under R. S., c. 143, § 12. The required bond was not filed by her friends with the treasurer of the hospital, and the plaintiff town

became liable under § 18 of the same chapter for the expense of her support. But in point of fact, the town paid nothing. Her friends, without filing the bond, paid all the expenses of the commitment, and of her support while she remained at the hospital.

Having been discharged on April 27, 1876, she was again committed in the same way by the municipal officers of Dexter on July 26, 1876, and they have paid about $100 for her support during this second commitment which they claim in this action to recover.

When first committed, September 23, 1874, she had had her home four years and four months in Sangerville. Her husband continued to reside there till the fall of 1876.

The question is, whether this first commitment and stay at the hospital interrupted her residence in defendant town, and prevented her acquiring at the expiration of the five years a legal settlement under R. S. c. 24, § 1, VI. It is agreed that if there is nothing in this to prevent, then the period of residence is complete and her settlement is in Sangerville. The agreed statement of facts, on which the case is submitted, specifically provides that this question only is to be determined, what shall be the effect of her residing in the insane hospital, under the circumstances stated, a part of the five years ordinarily required to give a pauper settlement.

The statute, R. S., c. 143, § 20, provides that "no insane person shall suffer any of the disabilities incident to pauperism, nor be hereafter deemed a pauper by reason of such support. But the time during which the insane person is so supported shall not be included in the period of residence necessary to change his settlement." The issue, then, is narrowed to the single inquiry, what is the meaning of the words "so supported" in the last sentence of the statute cited. If during the period of her first commitment, she was "so supported," that is to say, supported in the manner and in the sense which the statute intends, then, notwithstanding she is not to be deemed a pauper therefor, still this time cannot be included in the period of residence necessary to enable her to acquire a settlement in Sangerville.

Except as applied to cases in which the state assists in the sup-

port of the insane, we think the words "so supported" in this section mean supported at the hospital by the town; and that in this instance it cannot be said that the insane person was supported by the town during the first commitment. Her friends without giving bond paid for her support. A mere liability of the town to pay in the first instance, with right of recovery against those ultimately chargeable, is not support by the town.

In ordinary cases of furnishing supplies directly by a town to a pauper, it matters not whether the town has paid for the supplies or has obtained them on its own credit. *Fayette* v. *Lawrence*, 62 Maine, 234.

But in regard to the insane, an action is given by § 20 to the town chargeable in the first instance, and paying for their commitment and support, to recover the amount paid of the insane, or others legally liable for their support. This right of action, it was held in *Bangor* v. *Fairfield*, 46 Maine, 558, does not accrue till the sums due to the hospital are paid. Notice to the town where the settlement is, after the liability for hospital expenses has been incurred, but before their payment, is premature. *West Gardiner* v. *Hartland*, 62 Maine, 246.

The town, then, does not stand in the position of having furnished supplies, which, except in case of insanity, would be pauper supplies, until it has paid the dues at the hospital. Till then the town has no right of action; till the right of action accrues the position of the town is not that of one which has furnished support, and till support has been furnished by the town, there is no reason why the five years should not run.

The friends who pay the expenses in the first instance support the insane patient, whether the bond is filed or not. As the case stood, the town of Dexter was liable in the first instance for the expenses at the hospital. If we are to understand by her friends, who paid all these expenses, her kindred, they were liable over to the town therefor, if the town had first paid them. We think it much more true to say, that she was supported by those who were finally liable and who paid in the first instance, than that she was supported by those who were only intermediately liable and who did not pay at all.

It would be opposed to the spirit of the statute, in a case where the expenses were first paid by the friends of the insane and there was no payment by the town, to allow the commitment to the hospital to have any effect whatever upon the pauper settlement.

We are, therefore, of the opinion that the legal settlement of the insane person was in the defendant town when the expenses attending her support during the second commitment to the hospital were incurred and paid by the plaintiffs, and that the plaintiffs are entitled to recover the amounts so paid.

It is unnecessary to consider what the effect of this statute would have been upon the husband's settlement, or upon the derivative settlement of the wife, if the time of the first commitment were excluded from the period of residence necessary to give the insane person a settlement, had she been capable of acquiring one in her own right. If the facts were not such as to prevent the lapse of five years from giving her a settlement, had she been unmarried, they could not prevent the husband's residence from maturing into a legal settlement, and so giving her one by derivation. We have, therefore, for sake of convenience, discussed the matter as if it were her sole residence which at the expiration of the five years gave the legal settlement.

*Judgment for plaintiffs.*

APPLETON, C. J., BARROWS, DANFORTH, VIRGIN and PETERS, JJ., concurred.